Good morning, and may it please the Court. Tara Patel for the EEOC. I'd like to reserve three minutes for rebuttal. This appeal turns on three discrete points. First, that the employer liability standard for coworker harassment is negligence, and negligence has always included a preventative inquiry grounded in reasonableness as the Supreme Court in Vance explicitly recognized. Second, there was instructional error. The jury instructions cut off the primary pathway for liability in this case, which was a failure to reasonably prevent the harassment of Brian Banks. And third, evidence showed that Sun Chemical ignored the harasser's earlier conduct, earlier use of the N-word against a black employee. So under correct instructions, a jury could have found that Sun Chemical unreasonably failed to prevent the same harasser's later use of the same slur against the facility's only other black employee. Why did the instructions, I remember the judge saying, I think the instructions cover this failure to prevent theory. And it says, the defendant knew or should have known of the appropriate corrective action to end the harassment. It didn't say the harassment against, what was it, Mr. Banks, it said the harassment. And so why couldn't that be read broadly as including the prior instance of harassment as well? Your Honor, the first element of the instructions explicitly tied the harassing conduct specifically to the harassment committed by Navarez on Brian Banks. There was no mention of other harassing conduct anywhere in the instructions. There was no mention of the earlier harassment of Smallwood. So every instance from that first element refers back to that harassing conduct. So there was no room to consider the earlier harassment. So is this really what you're trying to get at, is that the jury should have considered Sun Chemical's response to the Smallwood complaints and that they should have been able to say that was an inadequate response? That's correct, Your Honor. The jury heard evidence that Sun Chemical ignored a prior complaint of the same slur by the same harasser less than a year or within a year of the incident, but they weren't allowed to consider that. And so that is precisely the conduct that the jury was not able to take into account. And so it's not really, well, perhaps it's not really preventing, but it's sort of sustaining or putting a stamp of approval on a hostile work environment that they know about. Am I saying the same thing as you're saying when you use the word prevent, or am I missing something? I think there are different ways to look at what happened. The idea here is that there is baked into the negligence standard obligation to take reasonable steps to prevent harassment. But it is by ignoring the prior complaint, it is, as you mentioned, green lighting or putting a rubber stamp on allowing that same conduct to occur. Again, such and that kind of foreseeable harm is precisely the type of foreseeable harm recognized by the Fourth Circuit and Ferris. And so the language that you wanted was instead of, you wanted, they knew about the circumstances or something giving rise to this harassment. Can you flesh that out a little bit of how you wanted that, what that portion of the instruction was going to do? Because as I understand, you didn't want the word prevent in the instruction, did you? To be clear, we did want the word prevent in the instruction because it got to the primary pathway for liability in the case. However, the sixth element in the model jury instructions do allow for the words, the conditions giving rise, as well as the conduct of the harassment. And that would have expanded, to your response to Judge Strauss' question, that would have been, am I right that in your view that would have expanded the harassment to beyond the harassment that Mr. Banks experienced? That would have expanded the harassment, but we would also need the seventh element to then refer to those conditions. So it could be prevent the harassment or correct those conditions. So to take some kind of response, make a reasonable response, because it seems to me that maybe the jury's questions could have been getting at, well, you responded, but it didn't work. Perhaps they heard the testimony or the evidence about the Sun Chemicals' response to the Smallwood allegations and complaints, but it didn't work. And they were kind of trying to parse that out. You did it, but it still happened again. No, Your Honor. I think the jury question showed that the jury was honed in on the question of employer liability, but specifically they asked, does the response need to correct the harassment or does it need to end the harassment? And the harassment, as defined in the jury instructions, couldn't refer to anything prior to the harassment of Banks. So there was no option in the jury instructions for- I just wonder if maybe they viewed it that way. You never know how a jury is hearing the testimony, because they did hear testimony about Smallwood, right, and what he complained. Precisely, and it's the fact that they heard testimony of Smallwood and then were not able to take it into account. And as this Court has held, jury instructions matter. As even Sun Chemical explained in closing, there was no room to consider what the- once that chemical did in response to that earlier incident. Now, I want to ask, so the Sellers case, which I think is the most on-point case from this circuit, I was on that panel. I think maybe Judge Kelly was on it as well. But it uses the word ongoing harassment and preventative remedial action. And one of the things- and I didn't- you do parse every word, but sometimes you don't realize how they apply in new situations. The idea of ongoing harassment requires, I think, more than one incident or a more recent incident. So with the Smallwood thing, that happened two years ago, was a discrete incident. It's unclear. There's a dispute about whether the employer knew about it. But it's not ongoing. I don't think there's any allegation that it's ongoing. And I understand that harassment can come from a single discrete incident. But we sort of suggest that this failure to prevent theory only really works if you have ongoing harassment. We simply don't have that here. Well, respectfully, Your Honor, the failure to prevent theory comes into play particularly when there is a single severe incident of harassment, because there is no opportunity to intervene and correct, such as in Sellers or in other cases, such as in this court's Green v. Franklin, where there's ongoing harassment. For example, in Paroline, there was a single severe incident of harassment. And the court said, our typical correction standard inquiry just doesn't work for this case. What we have to look at is what- did the negligence cause the harassment? And that's language borrowed from the Supreme Court in Allerth. I don't understand your answer, though, because in a continuing harassment case, and I think this is what Seller is getting at, you're supposed to- I mean, the whole idea behind Sellers is you're supposed to keep elevating or escalating. And so if you have ongoing harassment, let's say the first time you censure somebody, doesn't work. Then the next time, maybe you have to suspend them for a day, doesn't work. Third time, you may suspend them for a week and say, this is your last warning, doesn't work. Then the fourth time you terminate them. I would think a failure to prevent theory works just fine in that particular instance. But you said it only works, despite what we said in Sellers, in the single incident. No, it- to be clear, it also works in an escalating type of harassment case. It works particularly well in a single incident. It's a primary pathway for liability in a single incident case. However, in Sellers, as you mentioned, the court held that escalating type of harassment is precisely the type of harassment that would need to be corrected. And that, although the earlier act- we're not arguing that the earlier incident was necessarily actionable, it was the type of harassing conduct that needed to be corrected. And it was the type of conduct where if- where it- failure to correct it could reasonably lead to later harassment, especially when it's the same harassment committed by the same harasser. I don't disagree with you as a policy matter, but I don't think that's what we said in Sellers. Maybe you have a- if you can offer a different reading in Sellers, the way I read it is this theory really only works when you have ongoing harassment in the failure- and then it becomes- then it expands to become really, really bad, or something like that. That's how I read Sellers. Now maybe it didn't preclude it, but it used the word ongoing like, I don't know, four or five times. Even if it was ongoing harassment, it is ongoing harassment in this case as well. And if you look at it more broadly, it's the same harasser committing the same type of harassment again and then again. So even if you view Sellers in that way, that- a theory still applies. So you would say the second one, because the- but you're trying to figure out employer liability. So you would say in the second one that whether it was sufficient or not had to depend on whether they took it in light of the first one as well. Is that the idea? Even though it involved a different employee? Is that how you would make it ongoing? Yes, Your Honor. That's a way to make it ongoing. But again, the question is, did the negligence cause the harassment? And that's a backward-looking inquiry, and it's rounded in reasonableness. I see that my time is up. You can finish your answer if you would like, if you have anything else to say, or you can- Thank you, Your Honor. I'll give you some time for rebuttal. Thank you, Your Honor. Again, that inquiry is rounded in reasonableness, and it's what the employer does in advance that can be precisely relevant to the question of negligence. And again, that is black-letter negligence law. And again, I'd like to refer this court to the Supreme Court's specific quote in advance that a plaintiff can show employer liability quote, by showing that his or her employer was negligent in failing to prevent harassment from taking place, and evidence relevant can include a failure to respond to complaints. Thank you very much. Ms. Montgomery. May it please the Court. Makisha Montgomery on behalf of Appalachian Chemical Corporation. This Court should affirm the District Court's judgment for two fundamental reasons. First, with respect to the standard of review, the EEOC has not demonstrated that the District Court abused its discretion by instructing the jury verbatim from the Eighth Circuit Model Jury Instructions, which themselves are based on long-standing authorities from both the U.S. Supreme Court and this Court. Second, even if there was an abuse of discretion, any error was harmless. The jury was allowed to hear the equivocal hearsay testimony of Mike Smallwood about a single, not severe, alleged incident from years earlier, and determine whether Sun Chemical was negligent. Well, I don't know about, I mean, I was following you until you got not severe. I mean, you called them the N-word, right? I mean, that's the allegation, right? Well, Your Honor, I think it's a little more attenuated than that if you look at the entire record on this. What happened was Mr. Smallwood alleges that he went and talked to Sue Cornelison, who is the site manager. He equivocates on what exactly he told Sue Cornelison. He, on one hand, says, well, I think I said that he called me out of my name. And then later he says, but I could have said the N-word to Ms. Cornelison. Ms. Cornelison denies that this conversation ever occurred. And Mr. Smallwood never heard directly from Ricardo Navarez, who was the harasser, allegedly later, of Mr. Banks. He was told by Murillo Calderon, an entirely separate employee, that the word had been used in talking to, about Mr. Smallwood. So I just want to clarify that. You're not saying that the use of the N-word is not serious. No. You're saying that the evidence is very equivocal here. It is very equivocal if this was sincere. Absolutely, the use of the N-word is incredibly inappropriate. And Sun Chemical, when it became aware that it had been used, immediately disciplined Mr. Navarez for the use of it. However, in this case, it's so attenuated to whether it was even actually used that there's no way that we're getting to the appropriate amount of notice that Sun Chemical would have needed to have to actually have been held liable under it. And as Your Honor pointed out in the Sellers case that you were obviously on, what the court said there was, when the obligation comes into play for the employer to do something, it's when there is a known serial harasser. And we don't even get close to that fact pattern with this one because, again, we have Mr. Smallwood coming with hearsay to sue Cornelison and saying that someone else had told him that someone had used the N-word behind his back. And at the same time that he did that, he alleges that he produced to Ms. Cornelison a write-up regarding all of his issues that he had with Mr. Navarez. He later provided that same document to the EEOC. When you look at that document, there is not a single reference to the use of the N-word in that document, even though he said he contemporarily put together the document to give to Sue Cornelison about his concerns. And then finally, Mr. Calderon, who he says told him that this had occurred, doesn't corroborate that in his testimony either. He never says that he went to Mr. Smallwood and reported to him that Mr. Navarez had used the N-word behind his back. So we've got such an attenuated ability to give notice to Sun Chemical at all of any obligation to do anything that it's untenable to even put this as any sort of error for not having appropriate jury instructions here. If the evidence were stronger, I understand how you have presented it. But if it was fairly clear that Mr. Navarez, a person, had engaged in similar conduct with someone like Mr. Smallwood, would that, in your view, open the door to a different type of jury instruction? In other words, not limiting the harassment to just the harassment against Mr. Banks, but appreciating that Sun Chemical may have had info, or presenting evidence to the jury that Sun Chemical had evidence of this very person doing this very type of behavior, and just didn't have an adequate response to that, and that that then sort of created a hostile work environment that then Mr. Banks was caught up in. Would that sort of scenario then warrant at least a modification of that jury instruction, perhaps? I don't believe so, Your Honor. I think the jury instruction allows for that determination based on how it was worded. Well, it does allow for the knowledge, but getting to what harassment that they were having to address, I don't know that it does, does it? Yes, I do believe it does, because another portion of the instruction says that the jury is to consider the totality of the circumstances, so all circumstances that led up to the harassment. And again, there was no definition of the harassment in the instruction, so I think it would have been perfectly reasonable for the jury to be able to say any harassment that was caused, or resulted in harassment to Mr. Banks that could have been prevented earlier, and could have resulted from harassment that had happened to Mr. Smallwood earlier. So, you don't read that instruction the way your colleague does, that it's sort of the way it walks through, the only harassment in the first, second, third, the initial elements is really about Mr. Banks, and that he was subject to harassing conduct, and it was unwelcome, and then they talk about the harassment. You know, if there was another instruction that maybe expanded the harassment that they could consider, I'm not sure putting together totality of the circumstances with the harassment does it, but. I believe if you couple that with the known or should have known requirement, that was in the jury instruction between the two, the jury would have had plenty of opportunity to say the employer knew or should have known, because of both earlier complaint that was made about Mr. Navarez by Mr. Smallwood, and by Mr. Banks. I do think the known or should have known piece of this element six covered that as well, your honor. And furthermore, the EEOC never asked for any preventative type instruction. The only change they ask is for, you know, the one that they previously discussed, and they don't in their brief explain how that minor change to the instruction would have changed the outcome in any way. Are you talking about the changing it to knowing of the conditions giving rise to the harassing conduct? Yes, your honor. I don't think, again, the conditions giving rise, if you look at it exactly the same way, is still going to refer back to the harassment that was happening to Mr. Banks. So I don't think that changes anything. If you're talking about hostile work environment, the conditions of an employment context of your job site does seem broader than the harassment that you as the plaintiff are telling the jury that you experienced. I think that is such a minor difference, your honor, that there is no way that it resulted in abuse of discretion by the court in giving the instructions the way that they gave it. And it certainly didn't amount to a preventative instruction that somehow they were not permitted to have, that the EEOC was not permitted to have, because they never actually asked for a preventative instruction. So I don't think that there would have been any probability of a different outcome or that it misstated the law in the way that they used it. Wait, now you said that they never asked for a preventative instruction. They never asked for the instruction that they're asking for today? The only change in instruction was the one that Judge Kelley just pointed out. Actually they asked to eliminate completely the seventh element when they submitted the instructions to the court. It didn't contain the seventh element at all. And so they were actually asking the court, I think, to misstate the law by taking out the seventh element that was clearly required by both the model instructions and by all the case law that we cited in responding to the request that they take that out. And by the instructions, you said the one including the harassment, is that the one that they actually asked for and got? That one is in there. The one that they asked to be taken out was the seventh instruction, which is the defendant failed to take prompt and appropriate corrective action to end the harassment. So they took out the entire part that would actually impugn liability to use non-chemical if they did find that there had been harassment in the first place, which obviously is very important for a proper determination by the jury. And again, there is absolutely no evidence, and I think this is the most important thing, regardless of how the jury instruction was written, there is so little evidence that we had a serial harasser in this case that we even made that appropriate for that to be considered by the jury. We have a very, very negligible amount of evidence that there had been any prior harassment. It's completely disputed by the company. Again, it was hearsay that it even occurred in the first place. It's inconsistent with the written document that Mr. Smallwood produced to the company. So to say that that's sufficient notice so that they should even have had that preventative measure as part of the argument, I think is just not tenable. Thank you, Your Honor. Thank you, Counsel. All right. Ms. Patel, you used up your planned rebuttal time, but it was in responding to our questions. So take two minutes and respond if you'd like. Yes, Your Honor. And I actually have a question right off the bat. Sorry about that. But I just want to focus here because they're potentially outcome dispositive. What instructions did you actually ask for and which ones did you ask to be left out? Yes, Your Honor. We asked repeatedly throughout this trial and before the trial that the instructions include a preventative prong, the seventh element, and the sixth element also be modified to include conditions giving rise to harassment. That's illustrated in our brief repeatedly. It was at summary judgment. It was in response to Sun Chemical's proposed jury instructions. It was at the close of evidence when defendant moved for a directive verdict. And it came up again in the jury question, even after the jury instructions were given. And we've outlined all those citations in our brief. There was one instance where the employer liability standard was left out, but that is irrelevant given how many times the EEOC consistently preserved this issue for appeal. One other question, and this is a really important one as well. My understanding is Smallwood's testimony was hearsay, and it was let in only to impeach Sue Cornelison. So I don't know that there's any substantive evidence of that incident, that prior incident with the N-word. But you can tell me if there's something in the record specifically that is substantive. Yes, Your Honor. The judge did allow it in, and it was later referenced by both parties and without further hearsay objection, and that hearsay has not been objected to on appeal. So this was not hearsay, and the trial transcript reflects that. I also want to say that this is not harmless error. This question got to a jury. The district court found on summary judgment that the employer liability question was not, was in dispute specifically because there was evidence that Sun Chemical ignored Smallwood's complaints. And again, it's not just that Smallwood testified repeatedly that he called, that Navarro's called him the N-word. There's also evidence that four other employees heard Navarro's using the N-word with some frequency around the workplace, and I'm happy to give the citations to the court if that's helpful. All right. Thank you, counsel. We appreciate your arguments this morning. They've been very helpful. The case is submitted. We'll render a decision as soon as possible.